








```
JPP    2/3/06    9:22
3:05-CV-01468   WHITLOCK V. SPRINT WIRELESS LLC
*3*
*AMDCMP.*
```

FILED
06 FEB -2 AM 11:00
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
                                    DEPUTY

FRANCIS M. GREGOREK (144785)
BETSY C. MANIFOLD (182450)
FRANCIS A. BOTTINI, JR. (175783)
RACHELE R. RICKERT (190634)
WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
Symphony Towers
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE WHITLOCK, Individually and On Behalf of All Others Similarly Situated, | Case No. 05 CV 1468 JAH (WMc) |
| Plaintiff, | AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR FALSE ADVERTISING AND VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT |
| vs. | |
| SPRINT SPECTRUM L.P., d/b/a SPRINT PCS, SPRINT SPECTRUM HOLDING COMPANY L.P., and DOES 1 through 50, inclusive, | |
| Defendants. | JURY TRIAL DEMANDED |

3

Plaintiff brings this action on behalf of herself and all others similarly situated against Sprint Spectrum L.P., d/b/a Sprint PCS and Sprint Spectrum Holding Company L.P. (hereinafter collectively "Sprint" or "Sprint Wireless") for imposing unauthorized and illegal charges upon its customers, in violation of federal law, California law and California Public Utility Commission ("CPUC") rules, specifically those found in the statutes, rules and regulations of the Commission currently in force, and alleges as follows:

## INTRODUCTION

1. This complaint addresses Sprint's practices relating to the provision and billing of non-communications services, or text messages, through its network. Sprint has been systematically violating the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 ("TCPA"), and California statutes, such as Public Utilities Code §2890, and may also be in violation of California Public Utilities Commission (CPUC) Interim Decision 01-07-030, (Interim Order, Order Instituting Rulemaking on the Commission's Own Motion to Establish Consumer Rights and Consumer Protection Rules Applicable to All Telecommunications Utilities) (July 12, 2001) ("Interim Order") and General Order 168 Part 4, in numerous ways that are detailed below.

2. Sprint has delivered unsolicited advertisements, in the form of text messages, to its subscribers' cellular phones, has failed to provide customers with the required process, notice, opt-in protocols and proof of authorization required by law, and has failed to engage in required investigations relating to non-communications and communications charges. Upon information and belief, Sprint uses an automatic telephone dialing system to deliver such text messages.

3. The Utility Consumers' Action Network ("UCAN") filed a complaint against Sprint before the CPUC on July 20, 2005. UCAN has determined that Sprint charges its customers 10 cents for each incoming text message. UCAN has documented instances where Sprint has charged its customers for text messages sent by Sprint itself advertising various Sprint services. When customers complained about charges for Sprint's own text-message advertising, the company refused to put those customers on a "do-not-spam" list. Instead, the customers were given the option to either disable their phone from receiving *any* text messages or call Sprint every month and dispute such charges. The Legislature and the CPUC envisioned the potential for just

such risks, as evidenced in the Comment to Section C(1) of the Interim Rules Governing Non-Communications-Related Charges on Telephone Bills (Appendix A to the Interim Order):

> Because billing for non-communications-related charges on telephone bills was previously prohibited by law, many subscribers initially will be unaware that they are now exposed to a new risk of having unauthorized charges for non-communications-related products or services improperly placed in their telephone bills. The Legislature has acknowledged that additional safeguards are necessary to protect consumers from the risk of being "crammed" with charges that are unrelated to telephone service or other communications services. (See Stats 2000, ch 931 (AB 994).) Consumers should not be exposed to this risk unknowingly.

4. Sprint has ignored consumer protections established by the Legislature as well as the CPUC. It has also ignored its own terms and conditions pertaining to the use of customer proprietary network information ("CPNI"). As a result, Sprint should be ordered to provide the relief set forth below.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d). The matter in controversy as to plaintiff and the Class exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the Class are citizens of a state different from defendant Sprint. No other administrative agency has primary or exclusive jurisdiction over these claims.

6. Venue is proper in this Court because the plaintiff resides within this district and because defendant Sprint conducts business in, and many of the acts complained of occurred within, this district.

## THE PARTIES

7. Plaintiff Anne Whitlock is a resident of San Diego, California and has been a Sprint subscriber at all relevant times. Plaintiff brings this action in her individual capacity and on behalf of all others similarly situated to recover damages for fees charged by defendants for incoming text messages sent by defendant Sprint advertising various Sprint services and $500 in damages for each such text message which was delivered in violation of the TCPA.

8. Defendant Sprint Spectrum L.P. is a Delaware limited partnership currently doing business in the State of California as Sprint PCS, a provider of mobile cellular telecommunication services. Sprint Spectrum L.P. is located at 4717 Grand, Fifth Floor, Kansas City, MO 64112 and is a subsidiary of Sprint Nextel Corporation, a Kansas Corporation with its principle executive offices located at 2001 Edmund Halley Drive, Reston, Virginia 20191.

9. Sprint Spectrum Holding Company L.P. is a Delaware limited partnership with its principle place of business located at 4900 Main Street, 12th Floor, Kansas City, MO 64112. Sprint Spectrum Holding Company L.P. is the general partner of and controls Sprint Spectrum L.P.

10. The true names and capacities of the defendants sued herein as Does 1 through 50 are unknown to plaintiff, who therefore sues them by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of these defendants when they have been determined. These defendants are responsible in part for the acts and omissions alleged herein.

11. At all times herein mentioned in the causes of action into which this paragraph is incorporated by reference, each and every defendant was an agent of each and every other defendant. In doing the things alleged herein, each and every defendant was acting within the course and scope of this agency and was acting with the consent, permission, and authorization of each of the remaining defendants. All actions of each defendant alleged herein were ratified and approved by the officers and directors or managing agents of every other defendant.

## CLASS ACTION ALLEGATIONS

12. Plaintiff brings this action on her own behalf and on behalf of all other persons similarly situated. The Class which plaintiff seeks to represent is defined as:

> All California consumers who, during the Relevant Time Period, were customers of Sprint who did not provide Sprint with the authorization required by law in order for Sprint to send advertisements to their cell phones using SMS technology (text messaging), and yet were charged for receiving non-communications text messages or other services from Sprint (the "Class").

13. Excluded from the Class are defendants, any entity in which defendants have a

controlling interest, and any of defendants' subsidiaries, affiliates, officers, and directors. By this action, plaintiff seeks to obtain for herself and the Class return of the fees which Class members were charged by Sprint for receiving advertisements from Sprint via text messages, $500 in damages for each text message delivered by Sprint to the members of the Class in violation of the TCPA as well as any other remedy permitted by law such as punitive damages, treble damages under the TCPA, and attorney's fees.

14. The Class is composed of thousands of persons, the joinder of whom is impracticable, and the disposition of their claims in a class action will benefit both the parties and the court.

15. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual Class members, including but not limited to the following:

    a. Whether defendants violated §§1750, *et seq.* of the Cal. Civ. Code by, among other things, failing to disclose in its marketing and promotional materials that customers who signed up for text messaging services would be charged for receiving advertisements from Sprint via text message;

    b. Whether defendants violated the TCPA, 47 U.S.C. §227, by delivering unsolicited advertisements, in the form of text messages, to Class members' cellular telephones using an automatic telephone dialing system;

    c. Whether defendants, by their conduct, violated Public Utilities Code §2890, the Interim Order and General Order 168 Part 4;

    d. Whether plaintiff and members of the Class were charged fees for receiving advertisements from Sprint via text message in violation of California law; and

    e. Whether defendants should be compelled to pay damages in the amount of the fees charged to Class members for receiving advertisements from Sprint via text message and/or $500 per text message delivered in violation of the TCPA.

16. Plaintiff is asserting claims that are typical of the claims of the entire Class, and

plaintiff will fairly and adequately represent and protect the interests of the Class in that plaintiff has no interests antagonistic to those of the Class. Plaintiff has retained counsel who are competent and experienced in class action litigation.

17. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish the risk of incompatible standards of conduct for the defendants and would risk repetitious trials involving issues of fact and law common to plaintiff and the Class.

18. Questions of law and fact common to all members of the Class predominate over questions affecting only individual members, and a class action is superior to any other method for the fair and efficient adjudication of this controversy.

19. Plaintiff and the Class have suffered irreparable harm and damages as a result of defendants' wrongful conduct as alleged herein. Absent a class action, defendants will likely retain the monies obtained through their wrongdoing and will continue their wrongful course of conduct. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class members will continue to suffer losses and will allow defendants to retain the proceeds of their ill-gotten gains. To the best of plaintiff's knowledge, defendants continue to engage in their unlawful practices.

20. Defendant Sprint maintains lists of customers which can identify the Class members herein. Notice of pendency of this action can be given either by regular mail or by publication, which cost, under California law, can reasonably be imposed upon defendants.

## SUBSTANTIVE ALLEGATIONS

21. Sprint markets and sells mobile services in the State of California. Sprint provides non-communications services to California consumers in the form of their own non-communications services. Specifically, these are text-messaged advertisements sent on an unsolicited basis to its customers.

22. Sprint subscribers have the capability, through the use of SMS technology, of enabling non-communications charges and services by simply sending and receiving a text

-6-

message through their mobile phone to the non-communications provider (in this case, Sprint).

23. Sprint has charged its customers for unsolicited advertisements delivered via text message by Sprint in the State of California. Upon information and belief, Sprint used an automatic dialing system to deliver such text messages.

24. Plaintiff Whitlock signed a mobile phone service agreement with Sprint in May 2005. Within the first 30 days of service, Sprint began sending plaintiff unsolicited advertisements via text messaging to plaintiff's phone. The advertisements and dates they were sent to plaintiff are listed below.

25. On May 21, 2005 at 1:45 pm, Ms. Whitlock received her first message from Sprint for which she was charged 10 cents, which read as follows:

> "Welcome to Sprint PCS Vision. Surf the web 24/7, play games and enjoy your $10/mo credit! Visit http://sprint.com/m to learn how. Reply S to end tips."

26. On May 28, 2005 at 12:56 pm, Ms. Whitlock received the following message from Sprint for which she was charged 10 cents:

> "Get news, sports, scores, stock quotes, weather forecasts & a $10/mo credit with Sprint PCS Vision! Visit http://sprint/m to learn more. Reply S to end tips"

27. On June 4, 2005 at 11:56 am, Ms. Whitlock received the following message from Sprint for which she was charged 10 cents:

> "Learn how to use your $10/mo credit for hot downloads with Sprint PCS Vision. Reply RINGERS, GAMES, APPS, or SCREEN and we'll show you how. Reply S to end tips."

28. On June 10, 2005 at 10:06 am, Ms. Whitlock received the following message from Sprint for which she was charged 10 cents:

> "Get real-time baseball scores, news & more from ESPN on your Sprint PCS Vision Phone! Go to Web, Vision Home, Sports, ESPN, MLB then Scores. Reply S to end tips."

29. On June 17, 2005 at 2:07 pm, Ms. Whitlock received the following message from Sprint for which she was charged 10 cents:

> "Find out if you'll need your umbrella or shades tomorrow. Use Sprint PCS Vision and your $10/mo credit for the Weather Channel and more! Reply S to end tips."

30. Ms. Whitlock did not authorize these advertisements or opt into receiving any non-communications services from Sprint, or at any point enable any "tips." Nonetheless, plaintiff was billed $0.10 per advertisement received from Sprint.

31. Plaintiff Whitlock was billed for the first three text messages despite not opening the messages. Once she found out she was billed for the messages, she opened them to discover their content.

32. Plaintiff Whitlock called Sprint Customer Service following the June 17, 2005 text message to advise Sprint that she had never authorized these messages that appeared on her first bill and had not opted into receiving such messages. The Sprint billing department told her that Sprint can charge for any messages it sends, even if it is from Sprint. Plaintiff then contacted Sprint's technical department, which said they had the ability to block numbers from which subscribers are receiving text messages. The number, a Sprint number, was unable to be blocked by the technical department. Sprint told plaintiff she would need to call back each month to dispute additional similar charges.

33. On June 24, 2005 at 10:11am, Ms. Whitlock received the following message from Sprint for which she was charged 10 cents:

> "Shop and bid! Use Sprint PCS Vision & your $10/mo credit for Pocket Auctions for eBay®. Go to Downloads. Applications. Get New. Shopping. Reply S to end tips."

34. On June 25, 2005 at 5:27 pm, Ms. Whitlock received the following message from Sprint for which she was charged 10 cents:

> "Shop and bid! Use Sprint PCS Vision & your $10/mo credit for Pocket Auctions for eBay®. Go to Downloads. Applications. Get New. Shopping. Reply S to end tips."

35. On July 1, 2005 at 11:47 am, Ms. Whitlock received the following message from Sprint for which she was charged 10 cents:

> "Use your $10/mo credit for a cool new Sprint PCS Vision screen

-8-

saver. Just go to Downloads. Screen Savers. Check back often as we're updating them constantly!"

36. On July 1, 2005 at 1:04 pm, Ms. Whitlock received the following message from Sprint for which she was charged 10 cents:

"Use your $10/mo credit for a cool new Sprint PCS Vision screen saver. Just go to Downloads. Screen Savers. Check back often as we're updating them constantly!"

37. Plaintiff Whitlock again called Sprint following receipt of a bill that included the above charges. This second time, Sprint Customer Service indicated that they would block the number so that plaintiff would no longer receive calls from Sprint. However, no one at Sprint indicated that it was a "do-not-spam" list or provided plaintiff with any details regarding blocking of unwanted text messages. It is not clear as of yet whether or not the text messages are actually blocked for plaintiff Whitlock and whether she is able to receive any text messages.

38. Sprint's actions with plaintiff Whitlock and other subscribers violate Sprint's own terms of service as posted on its own web site. For example, a section, entitled "Rights," reads as follows:

Sprint respects your privacy. Under federal law, you have the right and Sprint has the duty to protect the use of your CPNI. If you prefer that Sprint not use, disclose or allow access to your CPNI to offer you communications related products and services to which you do not already subscribe, you may "opt-out" that is, direct us not to make those disclosures across additional product lines within Sprint. Your decision to opt-out will not affect the provision of any services to which you currently subscribe. Your approval or denial of approval for the use of CPNI is valid until you affirmatively revoke or limit such approval or denial. As such you may opt-out or revoke your decision to opt-out at any time by calling the number listed below. Sprint will allow at least 33 days from the mailing of this notice before your CPNI approval is assumed.

39. This passage states that there is a 33-day period before approval is assumed. Plaintiff Whitlock received messages from Sprint immediately following the beginning of her service plan. This is contrary to the Interim Order, which does not allow a consumer to opt out, but rather requires Sprint to require consumers to opt in before being billed for such services.

40. Additionally, Sprint's position towards bulk, unsolicited emailers is clear. Its terms

-9-

of service posted on its web site reads as follows:

> No spam; damages. Sprint PCS will immediately terminate any account which it believes, in its sole discretion, is transmitting or is otherwise connected with any spam or other unsolicited bulk email. In addition, because damages are often difficult to quantify, if actual damages cannot be reasonably calculated then you agree to pay Sprint PCS liquidated damages of $5 for each piece of spam or unsolicited bulk email transmitted from or otherwise connected with your account, otherwise you agree to pay Sprint PCS's actual damages, to the extent such actual damages can be reasonably calculated.

41. Apparently, Sprint's provisions against unsolicited text messages do not apply to their own bulk advertisements. Moreover, Sprint agrees that sending these messages costs persons time and money, quantified by Sprint at $5 per message sent. If this is correct, Sprint should pay the same amount to all affected consumers. The same type of messages targeted by Sprint's own prohibitions are the type of unsolicited advertisements it is sending its own subscribers and billing them for receiving.

## VIOLATIONS OF LAW

42. In California, the CPUC has promulgated specific regulations regarding non-communications charges being included on wireless cell phone bills. The rules in effect at the time of the conduct here in question are found in <u>Order Instituting Rulemaking on the Commission's Own Motion to Establish Consumer Rights and Consumer Protection Rules Applicable to All Telecommunications Utilities, Decision 01-07-030</u> (July 12, 2001), specifically the "Interim Opinion adopting Interim Rules Governing the Inclusion of Noncommunications-Related Charges In Telephone Bills," Appendix A "Interim Rules Governing Non-Communications-Related Charges on Telephone Bills" ("Interim Rules") contained therein.

43. Though non-communications charges used to be prohibited from being included on a telephone bill, the Legislature opened up telephone bills to non-communications charges early this century. Envisioning the potential for abuse, the Legislature authorized limiting regulations in California Public Utilities Code §2890, which reads in part "(a) A telephone bill may only contain charges for products or services, the purchase of which the subscriber has authorized."

-10-

44. The Interim Order puts responsibility on the phone company to require specific authorization of any non-communication charge. As stated in the Interim Rules, Section C, authorization is two pronged, requiring in Section C(1), **general authorization** from the customer to the phone company to allow non-communications charges on the customer's bill and opting in to receiving such charges, and in Section C(2), **specific authorization** at point of sale to allow the specific charge. According to the Interim Rules, Section B:

> [A]n unauthorized charge is a non-communications-related charge included on a subscriber's bill when the subscriber (1) has not authorized the billing telephone company, directly, to include non-communications-related charges on that subscriber's bill; or (2) has not authorized that particular charge. A charge placed on the subscriber's bill by a person who does not have actual, implied, or apparent authority to place such a charge, and which confers no benefit upon the subscriber, is an unauthorized charge.

45. As stated in Interim Rule Section C(1)(a),

> In obtaining authorization to bill for non-communications charges, billing telephone companies must disclose in a clear and conspicuous manner all material terms and conditions related to this service. Material terms and conditions include any applicable fees and charges, including late payment penalties and interest; any available options for limiting authorization (for example, to a dollar amount per month); how a subscriber may dispute a charge; the fact that the billing telephone company may not terminate basic local service, file an adverse credit report, or charge interest or finance charges on disputed amounts; how a subscriber may revoke authorization; and how a subscriber's confidential information is protected.

46. As stated in Comment 2 to Section C(1)(a),

> Regardless of the manner in which written permission is given, billing telephone companies must provide sufficient information to enable consumers to make informed decisions about whether to allow non-communications charges on their telephone bills, and must abide by those decisions. (See § 2896.) They must disclose all material terms and conditions, and must not mislead subscribers in an effort to convince them to authorize the use of their telephone bill for non-communications-related charges. (See Id. and Business and Professions Code § 17500.) Companies that do so will be subject to sanctions by the Commission for violating the

-11-

> Public Utilities Code and these rules. Such practices may also lead to court-ordered penalties pursuant to California's Unfair Competition Law (Business and Professions Code §§ 17200 and 17500).

47. As stated in Comment 3 to Section C(1)(a), " If a subscriber disputes a charge on the ground that the subscriber had not authorized the billing telephone company to include non-communication-related charges on the subscriber's bill, the billing telephone company bears the burden of proving that the subscriber did in fact provide such authorization."

48. Further, Section C(3) states "Subscribers may not be held liable for unauthorized charges. Subscribers must make a reasonable, good-faith effort to notify the billing telephone company promptly when the subscriber becomes aware of a probability of unauthorized use of the subscriber's account. If the billing telephone company is unable to verify authorization, a charge is deemed unauthorized."

49. Additionally, Section 2890 provides that a telephone bill "may only contain charges for products or services, the purchase of which the subscriber has authorized." The comment to C(3) states that "this provision [2890] mandates a 'zero-liability' rule for unauthorized charges."

50. As stated in Interim Rules Comment (1) to Section C(2), "The primary goal of Sections 2889.9 and 2890 and of these rules is to ensure that only authorized charges are billed to subscribers, *i.e.*, to deter 'cramming.' Billing telephone companies, billing agents, and vendors all are responsible for ensuring that only authorized charges are billed."

51. As stated in Comment 2 to the Interim Rules, Section C(2),

> Whatever the security procedure used, it should be at least as reliable as a PIN number, however. In the event a subscriber claims that a charge was unauthorized, the billing telephone company may not require the subscriber to pay the charge until the billing telephone company has obtained proof of proper authorization from the vendor or from the billing agent that submitted the charge for billing.

52. Allowing SMS text messaging to enable non-communications charges on a subscriber's wireless bill ignores the CPUC's requirement of providing safety measures equivalent

-12-

to a PIN number, and is particularly abused when the company is the one who is generating such charges.

53. An authorization, according to the Interim Rules, Section G(4), "is fraudulent if it is inauthentic (not given by the subscriber) or obtained from the subscriber based on false or misleading information." Therefore, as the advertising and marketing of non-communications providers also violates state laws governing fraudulent and misleading transactions, subscribers must receive a refund for any charges that resulted from such practices.

54. As stated in the Interim Rules, Section C(1), "Opt-in authorization information or confirmation, including any assigned or confirmed PIN, must be sent to the subscriber's billing address even if the authorization lists a different address for delivery of products or services." Sprint provides no opt-in authorization process, so by definition it cannot comply with this Section.

55. Sprint is also failing to respond to customer requests to only be charged if they opt into providing non-communications charge authorizations, instead imposing an opt out requirement that is contrary to the Interim Order. As stated in the Interim Rules, Section D(1) and General Order 168 Part 4 §D,

> Subscribers may revoke authorization to allow non-communications charges on their bills at any time without charge. They may do so by notifying their billing telephone company, by telephone, in writing, or via the Internet, that they no longer wish to allow non-communications charges on their telephone bill. The billing telephone company must confirm the revocation in writing within 10 business days. This written confirmation shall indicate the date and time the subscriber notified the billing telephone company that authorization was revoked. Billing telephone companies must allow subscribers to revoke authorization by telephone 7 days a week, 24 hours a day. The right to revoke authorization to allow charges includes charges from standing authorizations previously made by the subscriber, such as charges for monthly dues or subscription service. This right is in addition to any other right that the subscriber may have to cancel the transaction that gave rise to the billing charge.

56. Customers such as plaintiff Whitlock call numerous times and talk to numerous

-13-

Sprint customer service representatives ("CSRs") about having such illegal charges taken off their bill. Even when the customers have asked for non-communications services such as advertisements to be blocked, Sprint should have had its CSRs properly trained to block future non-communications charges. Indeed, even while plaintiff Whitlock received a credit for Sprint's own advertisement charges, her request at the same time (as she had requested in the past) to not have any future charges on her wireless bill, was apparently ignored, resulting in additional charges in July 2005. Sprint has failed to provide the ability to revoke any previous opt in requirement "7 days a week, 24 hours a day."

57. The comment to the Interim Rules, Section D(1) states that "As with credit cards, the consumer must be able to revoke authorization at any time to protect the subscriber in the event of attempted fraudulent use of the subscriber's account. As subscribers cannot be held liable for unauthorized charges, this provision protects the billing telephone company as well."

58. Revocation of any prior opt in authorization should be done by simply notifying the telephone company over the telephone; writing is not necessary. The above provision also suggests that a properly addressed email could also revoke authorization of non-communications charges. Even if she originally authorized non-communications charges (which she disputes and Sprint has never provided her any proof that she did so), plaintiff Whitlock was not informed of her right to revoke authorization, despite her inquiries, as required by the Interim Order.

59. As stated in the Interim Rules, Section E(1), "Billing telephone companies must take reasonable precautions to screen vendors and billing agents before agreeing to provide billing services for them, in order to screen out unreliable or untrustworthy business entities."

60. As stated in the Interim Rules, Section E(3),

> Contracts to provide billing services for vendors and billing agents must provide that the billing telephone company will require proof of authorization for all charges disputed by subscribers, including but not limited to the nature, time, place and fact of the authorization; the nature, qualities and price of the product or service; and other charges of any and every kind, such as taxes, charges for other products and services, shipping expenses, interest, and penalties; and the legal basis for any such charge, and that without such proof, the subscriber will be credited for the

-14-

> charge and the corresponding amount withheld from the vendor or billing agent. Billing telephone companies may impose fees on these vendors and billing agents for the cost of investigating and resolving subscriber complaints.

61. Sprint, according to CPUC rules, must require proof of authorization from carriers or third party non-communications providers before billing for non-communications services. Instead Sprint refuses to meet its burden to subscribers regarding opting in to receive these non-communications charges.

62. Even assuming sufficient authorization, which does not exist, Sprint is not meeting its responsibilities to handle complaints, provide proof of authorization for charges, remove charges for which there is insufficient proof, and remove and block future charges once the customer revokes any previous opt in to receive such messages that was provided, separate and apart from providing such services.

63. When a customer calls Sprint inquiring about non-communications charges, Sprint has a duty under the Interim Rules, Section G(1) and General Order 168 part 4, Sections (E) & (G) to do more than simply tell the customer that they must disable the function on their phone that allows for any text messages to be received.

64. Under the Public Utilities Code §§2895-2897, *et seq.* (Telecommunications Customer Service Act of 1993), the legislature authorizes the CPUC, specifically in §2896(c), to establish reasonable service quality standards, including standards regarding customer service and billing.

65. Section G(1) of the Interim Rules states:

> The billing telephone company is responsible for ensuring that subscriber complaints about non-communication charges on its bills are processed as required by these rules. Subscriber questions and complaints concerning non-communications-related charges should be addressed to the billing telephone company, or to its agent, as designated on the bill. The telephone bill must include a prominently displayed toll-free customer service number for this purpose. The toll-free number must be adequately staffed by personnel with sufficient training and authority to answer questions, investigate complaints, and adjust bills in favor of subscribers when appropriate.

-15-

> Telephone companies are required to provide adequate customer service as a telecommunications provider (*see* the Telecommunications Customer Service Act of 1993, codified at Sections 2895-2897). They must ensure that the additional customer service required of them in connection with non-communications charges does not negatively impact telephone customer service.

66. Sprint cannot simply rely upon the disabling of the phone's capacity to receive any text messages as an adequate correction to avoid consumers receiving advertisements Sprint disseminates.

67. As stated in the Interim Rules, Section G(2),

> Billing telephone companies or their agents shall promptly investigate subscribers' complaints of billing errors. Within 30 days of receiving a complaint of a billing error unrelated to the subscriber's telephone service, the billing telephone company must either credit the disputed charge to the customer or acknowledge, in writing, receipt of the complaint, and must verify the validity of the charge. Billing telephone companies must resolve such complaints within 60 days.

68. As stated in the Interim Rules, Section G(4),

> The billing telephone company or, if the vendor is handling the complaint, the vendor, will notify the subscriber in writing of the result of its investigation. If the vendor has failed to provide proof of authorization within the time allowed, the billing telephone company will credit the charge to the subscriber.

69. As an example of how Sprint violates these provisions, it never offered plaintiff Whitlock proof of authorization.

70. In the alternative, in the event that the Court determines that these charges are communications-related, Pub. Util. Code § 2890(a) states that "A telephone bill may only contain charges for products or services, the purchase of which the subscriber has authorized." Also, Pub. Util. Code § 2890(e) states:

> If an entity responsible for generating a charge on a telephone bill receives a complaint from a subscriber that the subscriber did not authorize the purchase of the product or service associated with that charge, the entity, not later than 30 days from the date on which the complaint is received, shall verify the subscriber's authorization of that charge or undertake to resolve the billing dispute to the subscriber's satisfaction.

-16-

71. Sprint systematically failed to adhere to these "cramming" rules in its treatment of plaintiff Whitlock and similarly situated customers.

## FIRST CAUSE OF ACTION
### (Violation Of The Consumers Legal Remedies Act, Cal. Civil Code §§1750, *et seq.*)

72. Plaintiff realleges and incorporates each and every paragraph above as though fully set forth in this paragraph.

73. This cause of action is brought pursuant to the California Consumers Legal Remedies Act (the "Act") (California Civil Code §§1750, *et seq.*).

74. The policies, acts, and practices heretofore described violated and continue to violate the Act in at least the following respects:

    a. In violation of §1770(5) of the Act, "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have...";

    b. In violation of §1770(9) of the Act, "Advertising goods or services with intent not to sell them as advertised"; and

    c. In violation of §1770(14) of the Act, "Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."

75. Defendants violated the aforementioned provisions of the Act by the conduct alleged in this Complaint, including by failing to disclose in its marketing and promotional materials that customers who signed up for text messaging services would be charged for receiving advertisements from Sprint via text message and for billing customers for text messages that the customers did not request or authorize.

76. Pursuant to §1782(d) of the Act, plaintiff and the members of the Class seek damages and an order enjoining the wrongful acts and practices of defendants.

77. Pursuant to Cal. Civ. Code §1782(a), plaintiff, by her counsel, sent a letter on July 22, 2005 to defendant Sprint via certified mail.

## SECOND CAUSE OF ACTION
### (Violation Of The Telephone Consumer Protection Act, 47 U.S.C.A §227)

78. Plaintiff realleges and incorporates the allegations of each and every paragraph above as though set forth in this paragraph.

79. The Telephone Consumer Protection Act of 1991, 47 U.S.C. §227(b)(1)(A)(iii) ("TCPA") and 47 C.F.R. §64.1200 promulgated thereunder, prohibit any "call" using an "automatic telephone dialing system" to "any telephone number assigned to a...cellular telephone service." The TCPA provides for injunctive relief and damages in the amount of actual monetary loss from violation of the TCPA or recovery of up to $500 in damages for each such violation which exceeded more than one call by or on behalf of Defendants within any 12-month period, whichever is greater. The TCPA also provides for trebling of such damages award for willful or knowing violations of the aforementioned code section or regulation.

80. The TCPA's prohibition on autodialed calls encompasses both voice calls and text calls to wireless numbers including short message service (SMS), or text message, calls. Moreover, the TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity — (a) to store or produce telephone numbers to be called, using a random or sequential number generator, and (b) to dial such numbers." 47 U.S.C. §227(a)(1).

81. The conduct of defendants alleged above has violated the TCPA. Upon information and belief, defendants, by using an automatic telephone dialing system, delivered unsolicited advertisements, in the form of text messages, to plaintiff's and Class members' cellular telephones.

82. Pursuant to 47 U.S.C. §277(b)(3), plaintiff and the Class are entitled to damages in the amount of the fees they were forced to pay due to defendants' unlawful acts or practices or $500 for each violation which exceeded more than one call by or on behalf of Defendants within any 12-month period, whichever is greater. Plaintiff and the members of the Class are also entitled to an injunction and other equitable relief preventing these ongoing unlawful practices from taking place as plaintiff and members of the Class may be irreparably harmed and/or denied an effective and complete remedy if such relief is not granted.

83. Defendants' violations of the TCPA were willful or knowing and therefore plaintiff and the Class are entitled to treble damages pursuant to 47 U.S.C. §277(b)(3).

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays as follows:

1. That this action may be maintained as a class action;

2. That all monies acquired by defendants' unlawful, fraudulent and unfair business acts or practices be held in constructive trust to avoid dissipation and/or fraudulent transfers of such monies by defendants;

3. That defendants' unlawful practices or acts be enjoined;

4. That plaintiff and members of the Class be awarded actual damages, including prejudgment interest in an amount according to proof and/or $500 per violation of the TCPA;

5. That defendants be ordered to disgorge any and all fees collected by their unlawful, fraudulent and unfair business practices alleged above, including interest on the sums wrongfully collected;

6. That plaintiff and the members of the Class be awarded reasonable attorney's fees, expenses and costs of suit pursuant to, *inter alia*, C.C.P. §1021.5 and Civil Code §1780(d);

7. For punitive damages; and

8. Such other and further relief as the Court may deem appropriate, just, and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 2, 2006

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
FRANCIS M. GREGOREK
BETSY C. MANIFOLD
FRANCIS A. BOTTINI, JR.
RACHELE R. RICKERT

*/s/ Rachele R. Rickert*
RACHELE R. RICKERT

750 B Street, Suite 2770
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599

SPRINT: 12311.AM.CPT

Attorneys for Plaintiff

-19-